**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION**

| | | |
|---|---|---|
| Evanston Insurance Co., | ) | |
| | ) | Civil Action No. 1:15-cv-01843-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| AJ's Electrical Testing & Service | ) | |
| (d/b/a Southern Substation), LLC; | ) | |
| Roy Johnson; Carrie Ann Johnson; | ) | |
| George Schultz, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

_____

| | |
|---|---|
| AJ's Electrical Testing & Service | ) |
| (d/b/a Southern Substation), LLC, | ) |
| | ) |
| Counter Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| Evanston Insurance Co., | ) |
| | ) |
| | ) |
| | ) |
| Counter Defendant. | ) |

_____

## I.     INTRODUCTION

Plaintiff Evanston Insurance Co. ("Evanston Insurance") seeks a declaratory judgment that it has no duty to defend in two underlying lawsuits filed in the Edgefield County Court of Common Pleas (hereinafter "Underlying Lawsuits"). (ECF No. 1 at 7, 9.) This matter is before the court on Defendant AJ's Electrical Testing & Services, LLC's (d/b/a "Southern Substation")

Motion for Summary Judgment[1] (ECF No. 35).  For the reasons below, this court **DENIES** Defendants' Motion for Summary Judgment (ECF No. 35).

## II.     JURISDICTION

Because the amount of controversy exceeds the jurisdictional requirement,[2] and because the citizens in this action are of different states,[3] this court has original subject matter jurisdiction.  *See* 28 U.S.C. § 1332 (2012).  Furthermore, under 28 U.S.C. § 2201 (2012), this court has personal and subject matter jurisdiction, and venue is proper in the Aiken Division of the United States District Court for the District of South Carolina.

## III.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On June 9, 2014, Defendants (and Underlying Plaintiffs) Roy Johnson and George C. Schultz, Jr. inspected and tested circuit breakers at a Trantech facility in response to an overhead light outage.  (ECF No. 1 at 3.)  The Underlying Lawsuits concern arc flash explosions that occurred during their inspection.  (*Id.*)

Prior to the explosions, Trantech had hired Shealy Electrical Wholesalers, Inc. ("Shealy Electrical") to perform an arc flash hazard analysis and switchgear testing to comply with Occupational Safety and Health Administration ("OSHA") regulations and National Fire Protection Association ("NFPA") Standards.  (*Id.* at 3–4.)  Shealy Electrical then subcontracted

---

[1] Defendants Roy Johnson and Carrie Ann Johnson adopts Defendant Southern Substation's Motion for Summary Judgment.  (*See* ECF No. 36.)

[2] *See* ECF No. 1 at 1; ECF No. 12 at 2; ECF No. 19 at 1.

[3] Plaintiff Evanston Insurance Company is an insurance company with its principal place of business in Illinois.  (ECF No. 1 at 1.)  Defendant Southern Substation is a Florida Limited Liability Company with its principal place of business in Jacksonville, Florida.  (ECF No. 8 at 2.)  Defendants Roy Johnson and Carrie Ann Johnson are residents and citizens of Aiken County, South Carolina.  (ECF No. 12 at 1.)  Defendant George C. Schultz, Jr. is a resident and citizen of Edgefield County, South Carolina.  (ECF No. 19 at 1.)

this work to Defendant Southern Substation, (*Id.*), which describes itself as an electrical contractor whose business involves electrical testing, maintenance, and repair at commercial and industrial facilities. (ECF No. 35-2 at 2.) Defendant Southern Substation performed the arc flash hazard analysis and OSHA arc flash hazard training seminar in December 2013. (ECF No. 1 at 4.)

Defendant Southern Substation made a claim against the policies for the allegations in the Underlying Lawsuits, where Plaintiff Evanston Insurance is participating in the defense. (*Id.* at 4–5.) Plaintiff has two insurance policies with Defendant Southern Substation. (*Id.* at 5.) Evanston Policy 3C05547 (hereinafter "Liability Policy") is a commercial general liability policy with effective dates of February 16, 2014 through February 16, 2015. (ECF No. 39 at Ex. C.) Evanston Excess Policy XOVA785814 (hereinafter "Excess Policy") is an excess liability policy also with effective dates of February 16, 2014 through February 16, 2015. (*Id.* at Ex. D.)

The Liability Policy contains an "Absolute Professional Liability Exclusion," which states, in relevant part:

> This insurance does not apply to any liability arising out of the rendering of or failure to render professional services or any error or omission, malpractice, or mistake of a professional nature committed or alleged to have been committed by on or your behalf.
>
> This exclusion applies to all injury sustained by any person, including emotional distress, whether alleged, threatened, or actual, including but not limited to your negligence or other wrongdoing.

(*Id.* at Ex. C.) The Excess Policy also contains a professional liability exclusion that states the "policy shall not apply to ultimate net loss for any loss, cost and/or expense arising out of, resulting from, caused by, or in any way contributed to the rendering of or failure to render any professional service." (*Id.* at Ex. D.)

3

All of the claims against Defendant Southern Substation in the Underlying Lawsuits arise out of the rendering of the arc flash hazard analysis and training. (ECF No. 1 at 4–5.) Plaintiff seeks a declaratory judgment that it has no duty or obligation under the Liability Policy or the Excess Policy to defend and/or indemnify Southern Substation for any matters related to the Underlying Lawsuits. (ECF No. 1 at 5, 9.)

Defendants move for summary judgment. (ECF No. 35.) Plaintiff replied with a Response in Opposition (ECF Nos. 39, 54). Defendant Southern Substation later submitted a Reply to Response in Opposition (ECF Nos. 44, 59), to which Plaintiff responded (ECF No. 60). This court held a hearing on November 18, 2015, taking under advisement Defendants' Motion for Summary Judgment. (ECF No. 55.)

## IV.     LEGAL STANDARDS

A.     <u>Declaratory Relief</u>

In this case, Plaintiff requests a declaratory judgment. (ECF No. 1 at 5, 9.) Federal courts have discretion to decline to exercise jurisdiction over a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Fed. R. Civ. P. 57. Specifically, the Act provides, in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201 (2012) (emphasis added).

The United States Supreme Court characterizes the Declaratory Judgment Act as 'an enabling Act, which confers a *discretion* on the courts rather than an absolute right upon the litigant.' *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (emphasis added) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). This discretion is not boundless

4

however, as a district court "may not refuse to entertain a declaratory judgment out of 'whim or personal disinclination, but may do so only for good reason.'" *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994) (citations omitted).  In *Aetna Casualty & Surety Co. v. Quarles*, the Court of Appeals for the Fourth Circuit found that 28 U.S.C. § 2201 gives district courts the discretionary authority to grant relief where it "(1) will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding."  92 F.2d 321, 325 (4th Cir. 1937); *see also Aetna Cas. & Sur. Co. v. Ind–Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998).  Accordingly, courts have used federal declaratory judgments "to resolve disputes over liability insurance coverage, even in advance of a judgment against the insured on the underlying claim for which the coverage is sought." *Nautilus*, 15 F.3d at 375 (citing *Stout v. Grain Dealers Mut. Ins. Co. v. Daniel*, 92 F.2d 838 (4th Cir. 1937)).

  B.  <u>Motion for Summary Judgment</u>

In response to Plaintiff's request, Defendants move for summary judgment on Plaintiff Evanston's declaratory judgment request.  (ECF No. 35.)  Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence affects the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  More specifically, a genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable factfinder could return a verdict for the non-moving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. However, "mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

C.       Choice of Law

"In a diversity case, a federal court must apply the choice of law rules of the state in which it is located." *Okatie Hotel Group, LLC v. Amerisure Ins. Co.*, 2006 WL 91577 (D.S.C. Jan. 13, 2006) (citing *Klaxton Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)); *Builders Mut. Ins. Co. v. Wingard Props.*, No.: 4:07-cv-2179-TLW, 2010 WL 3893701 (D.S.C. Sept. 28, 2010). In cases concerning an insurance policy's scope of coverage, South Carolina traditionally applies the law of the state in which the application for insurance was made and where the policy was formed. *See, e.g.*, *Unisun Ins. Co. v. Hertz Rental Corp.*, 312 S.C. 549 (Ct. App. 1993); *Bowman v. Cont'l Ins. Co.*, 229 F.3d 1141 (4th Cir. 2000).

South Carolina, by statute, modified this traditional rule. *See* S.C. Code § 38-61-10 ("All contract of insurance on property, lives, or interests in this State are considered to be made in the State … and are subject to the laws of this State."); *Bowman*, 229 F.3d at 2. Courts, however,

6

continue to consider the factual circumstances of a case in deciding whether S.C. Code § 38-61-10 (2015) or South Carolina's traditional choice of law rules applies. *See, e.g., Unisun Ins. Co.*, 312 S.C. at 549; *Bowman*, 229 F.3d at 114.

### V.     ANALYSIS

A.     <u>Choice of Law</u>

This court first considers the choice of law issue. Defendants argue that, functionally, it makes no difference whether this court applies Florida law or South Carolina law in determining the substantive approach to the professional liability exclusion contained in the policies. (ECF No. 35-2 at 5 (arguing that under the law of either state, the professional liability exclusion would not apply to exclude coverage for Southern Substation for the underlying lawsuits pending).) Plaintiff disagrees, arguing that Florida law alone should apply to both the attorney's fees issues and the substantive issues for this summary judgment motion because South Carolina has historically applied the law of the state in which the application for insurance was made and where the contract was formed. (ECF No. 39 at 8–9.)

This declaratory judgment action was filed in the South Carolina District Court based upon diversity jurisdiction under 28 U.S.C. § 1332—therefore, the Court should apply the choice of law rules of South Carolina. *See Okatie Hotel Group, LLC v. Amerisure Ins. Co.*, 2006 WL 91577 (D.S.C. Jan. 13, 2006) (citing *Klaxton Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)) ("In a diversity case, a federal court must apply the choice of law rules of the state in which it is located."); *Builders Mut. Ins. Co. v. Wingard Props.*, No.: 4:07-cv-2179-TLW, 2010 WL 3893701 (D.S.C. Sept. 28, 2010).

South Carolina's modification of its traditional choice of law rules via S.C. Code § 38-61-10 does not necessarily govern choice of law determinations in cases like this concerning the

scope of coverage under insurance policies.  In *Unisun Ins. Co. v. Hertz Rental Corp.*, 312 S.C. 549 (Ct. App. 1993), for example, the plaintiffs, who were injured in an automobile collision in South Carolina, filed an insurance coverage declaratory judgment action.  The court resolved the choice of law question by recognizing that the insurance policy in that case was executed in New York "with a corporation doing business in New York."  *Id.* at 184.  Moreover, the policy insured an automobile registered in New York.  *Id.*  The *Unisun* court found S.C. Code § 38-61-10—and, concomitantly, South Carolina case precedent—inapplicable, since "*at the time the contract was made*, the property and interests insured were in the State of New York." *Id.* at 184 n. 1 (emphasis added); *see also Bowman v. Cont'l Ins. Co.*, 229 F.3d 1141 (4th Cir. 2000) (applying the *Unisun* analysis).

For the same reasons as in *Unisun* and *Bowman*, this court agrees with both parties, (*see* ECF Nos. 35-2 at 13; 39 at 8–9), and concludes that S.C. Code § 38-61-10 does not apply here. Southern Substation is a Florida company with its principal place of business in Florida; it appears to have neither any employees nor any property in South Carolina.  Moreover, even though the plaintiffs in the underlying action are South Carolina residents, the insurance policies at issue were formed in Florida.  (*See* ECF No 1. at Ex. C, Ex. D.)

Therefore, this court concludes that under South Carolina's traditional choice of law determinations, Florida law applies in this action.  *See Ranta v. Catholic Mut. Relief Soc. of Am.*, 492 F. App'x 373, 375 (4th Cir. 2012) ("Under South Carolina choice of law rules, an insurance policy is governed by the law of the state in which the policy was issued.").

Having established this, this court will consider Defendants' Motion for Summary Judgment under Florida law.

    B.         <u>Summary Judgment</u>

The issue at the heart of this case is whether the services Defendant Southern Substation performed qualify as "professional" such that any injuries related to these services are excluded from coverage under the Liability and Excess Policies. This court first turns its attention to the role of Plaintiff's submission of related expert testimony on this issue in its summary judgment consideration.

1.   *Expert Testimony*

In support of its contention that professional engineers generally perform arc flash hazard analyses and training like in this case, Plaintiff submitted the report of an engineer, Lee Metz, as supplemental briefing to its original Response. (ECF No. 54.)   Plaintiff later supplied the court with an Affidavit of Mr. Metz, in which Mr. Metz concluded: "An arc flash hazard analysis should be performed by a registered professional electrical engineer." (ECF No. 64-1 at 4.)

On a motion for summary judgment, a district court may only consider evidence that would be admissible at trial. *See Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 973 (4th Cir. 1990); *Keziah v. W.M. Brown & Son, Inc.*, 888 F.2d 322, 326 (4th Cir. 1989).  Thus, "an affidavit filed in opposition to a motion for summary judgment must present evidence in substantially the same form as if the affiant were testifying in court." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 962 (4th Cir. 1996).  "Affidavits submitted in opposition to a motion for summary judgment 'made and supported as provided in this rule . . . must set forth specific facts showing that there is a genuine issue for trial.'" *M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 164 (4th Cir. 1992) (citing Fed. R. Civ. P. 56(e)).  As to an expert opinion, specifically, "an affidavit that states facts on which the expert bases an opinion satisfies Fed. R. Civ. P. 56(e) even though the expert does not attach the data supporting the facts." *Id.* at 166.

Again, Plaintiff supplied the court with Mr. Metz's Affidavit, in which he generally concluded that a registered professional electrical engineer should perform an arc flash hazard analysis. (ECF No. 64-1 at 4.) Whether the services Defendant Southern Substation performed qualify as "professional" unquestionably is a material issue of fact in this case. This Affidavit therefore complies with Rule 56(e) of the Federal Rules of Civil Procedure, and this court therefore will consider it in this summary judgment determination.

This court also can consider the expert report on which Mr. Metz relies to support the assertions in his Affidavit. Under *Daubert v. Merrell Dow Pharms.*, 113 S. Ct. 2786, 2799 (1993), this court must rule on the admissibility of expert scientific testimony. *Daubert* requires a two-part analysis: 1) a determination of whether an expert's testimony reflects "scientific knowledge," whether the findings are "derived by the scientific method," and whether the work product is "good science," and 2) a determination of whether the expert's testimony is "relevant to the task at hand." *Id.* at 2797, 2799. The United States Supreme Court has elucidated a number of factors, none of which are exclusive or dispositive, that district courts can consider when determining whether expert testimony is admissible under Rule 702 of the Federal Rules of Evidence. *See id.* at 2796–98 (describing those factors); *see also, e.g.*, *GE v. Joiner*, 522 U.S. 136, 146 (1997) (noting factors a court may consider in addition to those identified in *Daubert*); *Claar v. Burlington N. R.R.*, 29 F.3d 499, 502 (9th Cir. 1994) (same); *Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311, 1317 (9th Cir. 1995) (same).

Mr. Metz is a Registered Professional Engineer with over 28 years of engineering experience and arc flash hazard analyses like the one performed in this case. (ECF No. 64-1 at 1.) His opinion on the qualifications for performing arc flash hazard analyses (per the NFPA standards for safety requirements) presumably is based on specialized knowledge of engineering

and experience with performing arch flash studies and training for a range of companies. (*See generally id.*)  Moreover, Mr. Metz's report findings accompanying his Affidavit appear to stem from his assertion that arc flash study regulations contain formulas that are "theoretical and require interpretation by a qualified professional engineer" and from his review of software programs that are commonly used for arc flash hazard analyses. (*See id.* at 3.)

Upon review of Mr. Metz's report and Affidavit, this court can think of no reason to challenge Mr. Metz's qualifications or methodology under the *Daubert* analysis.  Neither do Defendants object to the expert or his proffered report on such grounds.

Instead, Defendant Southern Substation argues, among other things,[4] that reliance on the contents of the report would usurp this court's right to "interpret the policy" and to "interpret the regulations of the Occupational Safety and Health Administration."  (ECF No. 59 at 3.)  This court rejects that argument because the report, while it does reference federal regulations, ultimately is an experienced engineer's opinion on whether a particular service generally requires professional expertise. (*See, e.g.*, ECF No. 64-1 at 3 ("Much of the information needed to interpret the results of an arc flash study relies . . . with theoretical and working knowledge of electrical power distributions systems that professional engineers are trained to understand.").) Any consideration of the report by this court does not impede on its ultimate authority to

---

[4] Defendant Southern Substation's primary contention in response to the submission of the expert report is that the report was "not presented in admissible form" since "it was not submitted as part of sworn testimony, or as part of an affidavit or declaration."  (ECF No. 59 at 1–2.)  To resolve this specific contention, this court, exercising its discretion under law, ordered Plaintiff to submit an affidavit from Mr. Metz accompanying the report Plaintiff provided.  (*See generally* ECF No. 63.)  Plaintiff complied with that order and submitted an affidavit from Mr. Metz that he made while "duly sworn under oath," wherein he attested both to the truth of the statements of his affidavit and that the accompanying report was based on his "personal knowledge, experience, and training, and the statements and opinions . . . are to a reasonable degree of engineering certainty."  (ECF No. 64-1 at 1–2.)

11

interpret, itself, the policy and apply any relevant regulations to this case's facts for the purpose of making a summary judgment determination.

This court similarly rejects Defendant Southern Substation's contention that this court cannot consider Mt. Metz's report because it relies in part on statements in the software companies' license agreements, which Defendant claims is hearsay under Rule 801 of the Federal Rules of Evidence. (*See* ECF No. 59 at 5.) Even if Defendant was correct that this information is hearsay, experts can rely upon hearsay under Rule 703 of the Federal Rules of Evidence if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." *See United States v. Palacious*, 677 F.3d 234, 242 (4th Cir. 2012). In this particular case, it would not be unreasonable for an electrical engineering expert to rely on the language in agreements of software programs that are commonly used for arc flash hazard analyses to inform his opinion about the expertise generally required of engineers to perform those kinds of analyses.

Accordingly, this court will weigh Mr. Metz's Affidavit and accompanying expert report content in its summary judgment determination on this matter.

2.     *Court's Analysis*

The two policies at issue in this case clearly state that insurance coverage does not apply to the rendering of a "professional service." (ECF No. 39 at Ex. C, Ex. D.) However, since the policies fail to define "professional service," the key factual issue is whether the services Defendants rendered qualify as "professional" such that the insurance coverage should apply in this case—in other words, it is the material issue that would affect the disposition of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986) (defining "material issue" for the purposes of summary judgment). Therefore, Defendants, as

part of its motion for summary judgment, need to be able to show that "there is no genuine dispute" as to this material fact and that Defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).    Correspondingly, to withstand Defendants' Motion for Summary Judgment, Plaintiff has the burden of providing "sufficient evidence" supporting the factual dispute—that is, whether Defendants provided professional service—that would "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

This court first acknowledges that the parties disagree about which law governs this case. Defendants argue that *Aerothrust Corp. v. Granada Ins. Co.*, 904 So. 2d 470 (Fla. Dist. Ct. App.) (2005) applies. (ECF No. 35-2 at 6.) The *Aerothrust Corp.* case involved the interpretation of a policy's professional services liability exclusion and a products completed operations exclusion for the inspection of a hoist which caused a jet engine to fail. *Aerothrust Corp.*, 904 So. 2d at 471. The court, referencing the fact that only those services which require specialized training should be considered professional for the purposes of liability exclusions, held that the professional liability exclusion did not exclude coverage for the damages suffered in that case. *Id.* at 473.

An affidavit presented in that case indicated that there was no requirement that any of its employees who performed the inspection have a college degree or even a high school diploma. *Id.* That affidavit further stated that there was no certifying entity or accreditation for individuals who perform these inspections, nor were there any standards for such individuals. *Id.* Defendants, apparently finding the affidavit in that case illustrative, argue that in this case, the Declaration of Mr. Andrew Dobson filed with its Motion for Summary Judgment similarly makes clear that there is no requirement that any individual working for Southern Substation

13

who performs the work associated with arc flash analysis have any specialized training, certification, or licensing to do the work in which they are engaged.  (ECF No. 35-2 at 6.)

But Plaintiff counters the substance of Mr. Dobson's Declaration—and Defendants' overall comparison of this case to *Aerothrust Corp.*—by pointing out that Defendant Southern Substation states on its own website that its "arc flash solutions . . . provide the required worker safety and regulatory compliance" and that Defendant Southern Substation insures compliance with several regulating bodies, including the NFPA Standard 70E, OSHA, Institute of Electrical and Electronics Engineers-1584 safety standards, and S.C. Code Ann. Regs. 71 (2014), which adopts the federal workplace safety standards set forth in 29 C.F.R. § 1910 (2014).  (ECF No. 39 at 12 (emphasis added).)  Plaintiff further points out that, contrary to its assertion, Defendant Southern Substation held itself out to the world as a professional company with highly skilled and qualified workers.  (*Id.* at 13.)  Plaintiff specifically highlights the fact that Defendant Southern Substation's website states that its "highly trained and fully qualified engineers and technicians have a combined 85 years of testing, repair and troubleshooting experience" and that Southern Substation employees are "uniquely qualified to . . . develop, structure and implement a complete, cost effective arc flash solution."  (*Id.*; *see also id.* at 12–13 (challenging the "credibility" of Mr. Dobson's Declaration given the information Defendant Southern Substation presents on its website).)

Considering this evidence, this court finds that even if it were to apply *Aerothrust Corp.*, as Defendants argue it should, Plaintiff has met its summary judgment burden as the non-moving party because the evidence it provides could support a reasonable conclusion that Defendants' services in dispute here—specifically, the arc flash analysis and training—were professional in nature.  *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990) (requiring

a court to view the evidence of a case in the light most favorable to the non-moving party in a summary judgment motion). In any event, Plaintiff also makes a reasonably strong argument that this case is more analogous to *Auto-Owners Ins. Co. v. E.N.D. Servs.*, 506 Fed. Appx. 920, 923 (11th Cir. 2013), which distinguished *Aerothrust Corp.*. (ECF No. 39 at 11–15.)

*Auto-Owners Ins. Co.* concerned the liability policy of a home inspection company that excluded professional services related to inspections, surveys, and appraisals. *Auto-Owners Ins. Co.*, 506 Fed. Appx. at 921. The Court of Appeals for the Eleventh Circuit in that case affirmed the district court's conclusion that, under Florida law, home inspections were inherently included within the term "professional services." *Id.* at 922–23 (affirming the district court's decision to analyze various factors to be considered in determining the applicability of a professional services exclusion, including: 1) that inspections required specialized skill not generally available to the public, 2) that the inspection company held itself out as providing professional services, 3) that various organizations had promulgated professional standards for the home inspection industry, and 4) that other courts have applied "professional services" exclusions to non-traditional professions). Plaintiff argues that given the district court rationale that the appellate court affirmed in that case, *Auto-Owners Ins. Co.*, more generally, expands the concept of "professional services" to include services like those in this case such that the insurance coverage exclusion should apply. (ECF No. 39 at 12–14 (noting, for example, that after *Auto-Owners*, "mere 'on the job-training' does not necessarily prevent services from being considered 'professional services'" and that the *Auto-Owners* decision demonstrates that in interpreting "professional," the focus should be on the "work performed, rather than the subjective training level of the worker").)

Lastly, and of particular import, Plaintiff provides evidence, in the form of an affidavit and report from an engineering expert, that clashes with Defendants' central contention that the services it provided should not be considered "professional" such that it should be excluded from insurance coverage. (*See generally* ECF Nos. 54, 54-1, 64.) The Affidavit, referencing the report, in part, states rather plainly, for example: "Many of the formulas cited in [federal arc flash analysis standards] are theoretical and require interpretation by a qualified professional engineer." (ECF No. 64-1 at 3.) Additionally citing federal regulations, South Carolina state laws, and language of the software programs commonly used in arc flash analyses, Mr. Metz concludes that an arc flash hazard analysis "is a vital part of the safety policy for any company," that it "is required to keep employees safe from life-threatening harm," and that it "should be performed by a registered professional electrical engineer." (*Id.* at 2–4.) This conclusion starkly contrasts with Defendants' contention that an arc flash analysis "does not involve the rendering of 'professional services,' but involves completion of and recording of various data and information on electrical devices." (ECF No. 35-2 at 2.)

Thus, upon reviewing the record as a whole, this court finds that a reasonable factfinder could return a verdict for Plaintiff in its declaratory judgment action under either *Aerothrust Corp. v. Granada Ins. Co.*, 904 So. 2d 470 (Fla. Dist. Ct. App.) (2005) or *Auto-Owners Ins. Co. v. E.N.D. Servs.*, 506 Fed. Appx. 920, 923 (11th Cir. 2013) due to the evidence Plaintiff has put forth in response to Defendants' Motion for Summary Judgment (ECF No. 35).[5]  *See Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011) (explaining that

---

[5] This court finds that the evidence and legal standards it discusses herein are sufficient to support its ruling and that it is unnecessary to engage the parties' respective arguments regarding the significance of Defendants' financial statements or potential internal policy inconsistencies created by a particular reading of the policy language in this case. (*See generally* ECF Nos. 35-2, 54, 59, 60)  Given this court's ruling, it also is unnecessary at this time to rule on the issue of whether Defendants are entitled to attorneys' fees under Florida law. (*See* ECF No. 35 at 10–13.)

for the purposes of summary judgment, a genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable factfinder could return a verdict for the non-moving party).

## VI.     CONCLUSION

For these reasons, this court **DENIES** Defendants' Motion for Summary Judgment (ECF No 35).

**IT IS SO ORDERED**.

*J. Michelle Childs*

United States District Judge

January 25, 2016
Columbia, South Carolina